**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re Application of DAVID A. GODFREY and                    Case No. _____
YUKOS FINANCE B.V. for an order to conduct
discovery for use in a foreign proceeding from Robert
Foresman.

                                                   Petitioners.
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PETITION AND APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FROM
<u>ROBERT FORESMAN FOR USE IN FOREIGN PROCEEDINGS</u>**

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Tel.: (212) 808-7800

*Attorneys for Defendants David A. Godfrey*
*and Yukos Finance B.V.*

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...................................................................................... 1

II.   RELEVANT FACTS ................................................................................. 4

    A.    Respondent Foresman ...................................................................... 4

    B.    The Russian Government's Campaign Against Yukos Oil ................... 5

    C.    Auction of Yukos Finance's Assets ................................................... 6

    D.    The English Proceedings.................................................................... 7

    E.    Previous Discovery Obtained From Respondent Foresman In the Dutch
        Proceedings and Co-Defendants in the English Proceedings Under
        28 U.S.C. § 1782 ............................................................................... 9

III.  SECTION 1782 AUTHORIZES THE DISCOVERY PETITIONERS
      SEEK AND THE DISCRETIONARY FACTORS WEIGH HEAVILY IN
      FAVOR OF GRANTING PETITIONERS' REQUESTED DISCOVERY ................... 11

    A.    Applicable Law ............................................................................... 11

    B.    The Information Sought Is Highly Relevant and Presumptively
        Discoverable Under Section 1782 ................................................... 13

    C.    The Requested Discovery Meets the Statutory Requirements of Section
        1782.................................................................................................. 14

        1.    Respondent Foresman Resides and Is Found Within the District........... 14

        2.    The Discovery Sought Is Intended For Use In A Foreign
            Proceeding............................................................................... 15

        3.    Each of the Petitioners Is an Interested Person ....................... 16

    D.    The Intel Discretionary Factors Weigh Heavily in Favor of
        Granting Petitioners' Application ..................................................... 16

        1.    Although the Respondent is a Party to the Foreign Proceeding, the
            Foreign Tribunal Does Not Have the Ability to Control the
            Evidence.................................................................................. 16

        2.    The Nature of the Foreign Tribunal, the Character of the
            English Proceedings and the English Court's Receptivity to
            Assistance Favor Granting the Petitioners' Application........................ 18

i

        3.      This Application Is Not an Attempt to Circumvent English Law or Policy .................................................................................................... 20

        4.      The Discovery Is Neither Unduly Burdensome Nor Intrusive ................ 21

   E.     Ex Parte Relief Is Appropriate Under Section 1782(a) ........................................ 23

IV.    CONCLUSION ........................................................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*,
No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)................................16, 17

*In re Application of David A. Godfrey and Stichting Administratiekantoor Financial Performance Holdings*,
Case No. 14 Misc. 00316 (S.D.N.Y. Sep. 22, 2014) ...........................................................1, 9

*In re Application of Guy*,
No. M 19-96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ...........................................16, 19

*In re Application of Michael Wilson & Partners, Ltd.*,
No. CIV.A. 06-CV-02575MS, 2007 WL 2221438 (D. Colo. July 27, 2007).........................19

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998), *as amended* (July 23, 1998) .................................................4, 12

*Brandi-Dohrn v. IKB Deutsche Industriebank*,
673 F.3d 76 (2d Cir. 2012).............................................................................................18, 21

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)..........................................................................................12, 15

*In re Emergency Ex Parte Application of David A. Godfrey and Yukos Finance B.V.*,
Case No. 17-21631-MGC (S.D. Fla. May 2, 2017)..........................................................1, 11

*In re Emergency Ex Parte Application of Godfrey*,
No. 17-21631-CV, 2018 WL 1863749 (S.D. Fla. Feb. 22, 2018) ........................11, 13, 17, 20

*In re Ex Parte Application of Glob. Energy Horizons Corp.*,
No. 5:15-MC-80078-PSG, 2015 WL 1325758 (N.D. Cal. Mar. 24, 2015) ......................15, 19

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012) ..................................................................................15, 23

*In re IKB Deutsche Industriebank AG*,
No. 09-CV-7852, 2010 WL 1526070 (N.D. Ill.. Apr. 8, 2010)..............................................19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..................................................................................................... *passim*

*In re Letter of Request from Crown Prosecution Serv. of United Kingdom*,
    870 F.2d 686 (D.C. Cir. 1989) ................................................................... 19

*London v. Does 1-4*,
    279 F. App'x 513 (9th Cir. 2008) ............................................................... 22

*Mak v. For Issuance of Discovery in Aid of Foreign Proceeding Pursuant to 28*
    *U.S.C. 1782, No. C 12-80118 SI*,
    *2012 WL 2906761* (N.D. Cal. July 16, 2012) ........................................... 22

*Marubeni Am. Corp. v. LBA Y.K.*,
    335 Fed. App'x 95 (2d Cir. 2009) .............................................................. 17

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ............................................................... *passim*

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order*
    *Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in*
    *Foreign Proceedings,* No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y.
    Feb. 18, 2016) ................................................................................. *passim*

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co*
    *LLP Pursuant to 28 U.S.C. sec. 1782*,
    110 F. Supp. 3d 512 (S.D.N.Y. 2015) ........................................................ 20

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004) ........................................................ 18

**Statutes**

28 U.S.C. § 1782 ............................................................................... *passim*

Fed. R. Civ. P. §§ 30 & 45 ......................................................................... 1

**Other Authorities**

*See Hulley Enter. Ltd. v. The Russian Fed'n,* PCA Case No. AA 226, Final Award
    (July 18, 2014), *available at* http://www.italaw.com/sites/default/files/case-
    documents/italaw3278.pdf ......................................................................... 6

## I.    INTRODUCTION

David A. Godfrey ("Godfrey") and Yukos Finance B.V. ("Yukos Finance," and together with Godfrey, "Petitioners") respectfully submit this *ex parte* application ("Application"), along with the Declaration of Martin A. Krolewski ("Krolewski Decl.") and Declaration of Bernard O'Sullivan ("O'Sullivan Decl."), and all exhibits affixed thereto, for an order to conduct discovery in aid of and for use in a foreign litigation, pursuant to 28 U.S.C. § 1782 ("Section 1782") and Rules 30 and 45 of the Federal Rules of Civil Procedure.  Petitioners seek a deposition from Robert Foresman ("Respondent") and for the production of limited documents at the deposition for use in *Yukos Finance B. V., David Godfrey, et al. v. Lynch, Foresman et al.*, CL-2015-000829, an action pending before the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court, in London, England (the "English Proceedings").  *See* Krolewski Decl. Ex. B.

The Russian Federation seized the assets of OAO NK Yukos Oil Company ("Yukos Oil"), previously the largest Russian oil company not owned by the Russian government, and then sold those assets in what Petitioners contend was a series of rigged auctions designed to expropriate Yukos Oil's assets and put them under the control of the Russian state.  Renaissance Capital ("RenCap"), of which Respondent Foresman was an executive at the relevant time, along with Monte-Valle, VR Capital Group Ltd., Jaime J. Montealegre and HBK Capital Management (together, the "Consortium"), participated in one of these rigged auctions for the purchase of Yukos Oil assets sold in "Lot 19" on August 15, 2007, in Russia.  *See* Krolewski Decl. Exs. I-K.

The asset purportedly acquired by the Consortium was Yukos Finance, a Dutch subsidiary of Yukos Oil.  The Lot 19 bankruptcy liquidator, Eduard Rebgun ("Rebgun"), permitted only pre-approved bidders to participate in the Yukos Finance auction.  One of those pre-approved bidders was an entity called OOO Promneftstroy ("Promneftstroy").  Prior to the

auction, the Consortium, through its member Monte-Valle, acquired Promneftstroy from the Russian state-owned Rosneft Oil Company ("Rosneft").  *See* Krolewski Decl. Exs. I-K. Expecting to emerge victorious from the auction because the outcome was pre-determined, Promneftstroy and Rosneft divvied up the assets of Yukos Finance *prior to* the auction including the shares of an oil pipeline called Transpetrol.  *See* O'Sullivan Decl. ¶ 4.  As planned, Promneftstroy won the rigged auction, purchasing the shares in Yukos Finance at a pre-agreed price.

As a result of the Russian government's seizure of the Yukos Oil assets, including Yukos Finance, and the rigged bankruptcy auction of the shares of Yukos Finance held on August 15, 2007, Petitioners and/or their affiliates filed dozens of suits in the Netherlands, the home of Yukos Finance (together, the "Dutch Proceedings").  In these suits, among other things, the Petitioners and/or their affiliates disclaim the rigged auction of Lot 19 and assert their rightful ownership of Yukos Finance.  *See* Krolewski Decl. ¶ 13.  The last stage of the lead and most important of the Dutch Proceedings, captioned *Godfrey v. OOO Promneftstroy*, is currently pending before the Dutch Supreme Court.  *See id.*  Specifically at issue in that suit is:  (i) whether the bankruptcy of Yukos Oil lacks legal effect in the Netherlands; and (ii) whether Dutch public order precludes the recognition of Promneftstroy's purported claim to the shares in Yukos Finance.  *See id*.  The Dutch District Court and Court of Appeals have already ruled that the liquidation of Yukos Oil had been obtained contrary to Dutch public policy and therefore, the Yukos Oil bankruptcy was unrecognizable.  *See id*.

The English Proceedings involve the same underlying allegations and core set of facts as the Dutch Proceedings.  In the English Proceedings, Petitioners and other claimants (together, "Claimants") allege that Stephen Lynch, Stephen Jennings, Robert Reid, Richard Deitz and

Respondent Foreman (individually, "Defendant" and together, the "Defendants"), all members of the Consortium, caused them harm by wrongfully causing or facilitating Promneftstroy's participation in the rigged auction for Yukos Finance's shares, knowing and intending Promneftstroy would "win" the auction at a pre-agreed price, and once the auction was won, Promneftstroy would then sell (at a dramatically below market price) the shares of Transpetrol to a Russian state nominated buyer. *See* O'Sullivan Decl. ¶¶ 3-4, 19.  Claimants seek the costs and expenses that they have incurred as a result of:  (i) investigating the circumstances surrounding the sham auction and (ii) protecting their rights, including by bringing and defending the Dutch Proceedings with respect to the ownership and control of Yukos Finance and related companies. *See id*.   Further, the Claimants allege that due to the Defendants' interference with respect to the proposed sale of shares in Transpetrol, they have lost investment income because they were unable to freely invest the proceeds of the sale of Yukos Finance's shareholding in Transpetrol as the proceeds were held in escrow with low returns as a result of the actions of the Defendants. *See id.*

Respondent Foreman, a senior executive at one of the Consortium members during the relevant time period, participated in the sham auction.  As such, Mr. Foreman has critical personal knowledge about the auction, the pre-determination that Promneftstroy would "win" the auction and the pre-agreed price it would pay, the pre-agreement to sell Transpetrol to a purchaser nominated by the Russian state at a dramatically below market price, Promneftstroy's ownership claims in Yukos Finance, and the Defendants' interference in the Claimants' proposed sale of shares in Transpetrol, of roles and knowledge of other parties who colluded with Promneftstroy to rig the auction of Lot 19, all of which are highly relevant to the dispute at the heart of the English Proceedings.  *See id.* at ¶¶ 20-22.

3

Section 1782 enables foreign litigants to obtain evidence from persons located in the United States in aid of a foreign proceeding.  Mr. Foresman resides in this District, and this Application seeks limited discovery in the form of only a deposition of Mr. Foresman and for the production of limited documents at the deposition.  The requirements for issuance of a Section 1782 subpoena are minimal and are met by this Application.  *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *see also Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015).  Where, as here, the information sought is relevant, it is "presumptively discoverable" under Section 1782.  *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998), *as amended* (July 23, 1998).  Petitioners thus respectfully request that this Court grant their Application.

## II.      RELEVANT FACTS

### A.      Respondent Foresman

Mr. Foresman resides, works, and can be found in the Southern District of New York. He purchased a property at 680 Milton Road, Rye, Westchester County, New York in 2013 and, on information and belief, currently resides there. *See* Krolewski Decl. ¶ 7, Ex. C-D.  Mr. Foresman is also a registered voter in Westchester County, New York, at the address listed above.  *See id.* at ¶ 8, Ex. E.  He currently is employed by UBS AG as a Vice Chairman of its investment bank based in New York City.  *See id.* at ¶ 9, Exs. G-H.  This is one of several positions in New York City that he has held since 2013.  *See id.* at ¶ 9, Exs. F-G.

From September 2006 through September 2009, Mr. Foresman was a Moscow based executive at one of the Consortium members.  *See id.* at ¶ 7, Ex. D.  The Consortium participated in the rigged auction for the purchase of the shares of Yukos Finance on August 15, 2007. Respondent Foresman himself also has direct ties to the Russian government through, *inter alia*, his former superior at Dresdner Bank, Matthias Warnig, who is publicly reported to be a personal

friend of the Russian President.  *See id.* at Exs. N-O.  Presumably because of these direct ties to the Russian government, the United States Senate Committee on the Judiciary issued a request for documents and a scheduled interview with Foresman regarding an investigation that Russia interfered in the 2016 U.S. elections. *See id* at Ex. N.

**B.     The Russian Government's Campaign Against Yukos Oil**

Yukos Oil was Russia's largest crude oil producer and exporter until early 2004.  *See* Krolewski Decl. Ex. L.  In 2004 Yukos Oil was still pumping nearly 1.7 million barrels of oil every day, or 2 percent of the world's supply.  *See* Krolewski Decl. Ex. P.  Yukos Oil was generally regarded as Russia's most progressive, transparent, and successful multinational company.  *Id.*  As a result, it attracted a considerable amount of foreign investment from around the world.  *Id.*  By 2004, Yukos Oil's market capitalization (on Russia's ruble-denominated MICEX exchange) was over $30 billion.  *Id.*

In 2003, the Russian government commenced a multifaceted attack on Yukos Oil and its then-chief executive, Mikhail Khodorkovky, who was thought to be a potential political rival of the Russian President.  In October 2003, in a move widely condemned as politically motivated, Russian government security agents stormed Mr. Khodorkovsky's private plane at 5 a.m. during a refueling stop in Siberia, shouting "weapons on the floor or we'll shoot" and arrested Mr. Khodorkovsky.  *See* Krolewski Decl. Exs. L and P.  With Mr. Khodorkovsky removed, the Russian government then effectively nationalized Yukos Oil by retroactively changing tax laws and assessing back taxes against Yukos Oil, preventing Yukos Oil from paying those alleged taxes, and then forcing the sale of the company's assets to state-owned vehicles (including Rosneft) in sham auctions with prearranged outcomes.

Numerous international observers have condemned these actions by the Russian government, including the United States Department of State, the Parliamentary Assembly of the

Council of Europe, the Council on Foreign Relations, the Independent Task Force on U.S. Policy toward Russia, and observers both inside and outside Russia. Indeed, on July 18, 2014, a highly distinguished arbitral tribunal sitting in The Hague under the auspices of the Permanent Court of Arbitration (PCA), held unanimously that the Russian Federation breached its international obligations under the Energy Charter Treaty (ECT) by destroying Yukos Oil and appropriating its assets, and as a result must pay more than $50 billion to the shareholders of the former Yukos Oil.  *See* Krolewski Decl. at ¶ 14, Ex. L.  The tribunal found, among other things, that "the auction of Yuganskneftegaz," Yukos Oil's primary oil production subsidiary, was "rigged" and amounted to "a devious and calculated expropriation" by the Russian Federation.  *See Hulley Enter. Ltd. v. The Russian Fed'n,* PCA Case No. AA 226, Final Award, at 26, 324, 340 (July 18, 2014), *available at* http://www.italaw.com/sites/default/files/case-documents/italaw3278.pdf. Although the award was annulled by The Hague District Court in April 2016, the annulment was based on jurisdictional grounds and not on the facts.  *See* Krolewski Decl. at ¶ 13, Ex. M.  The matter is currently up on appeal before the Court of Appeals in The Hague.  *See id.*

As a result of the Russian government's unlawful and confiscatory actions discussed above, Russian state-owned energy companies eventually acquired nearly all of Yukos Oil's assets through a series of sham auctions.  Rebgun, Yukos Oil's liquidator in the Russian bankruptcy proceedings, managed each of these sham auctions.  *See* Krolewski Decl. Ex. L.

## C.      Auction of Yukos Finance's Assets

Yukos Finance was a Dutch subsidiary of Yukos Oil. Rebgun, in his role as liquidator, scheduled an auction of the share of Yukos Finance on August 15, 2007 in Moscow.  *See id.* Rosneft, the Russian state-owned oil company that acquired the majority of Yukos Oil's assets, colluded with Rebgun and others to ensure that the "winner' of the auction would be a proxy for Rosneft and to pre-arrange the price of the "winning" bid.  *See id.*  In connection with this fraud,

6

the Consortium obtained Promneftstroy, a pre-approved bidder, from Rosneft.  Promneftstroy

then bid on and "won" the auction for 100% of Yukos Finance's issued and outstanding shares at

a "winning" pre-agreed price of about $310 million.

**D.      The English Proceedings**

Respondent Foresman is one of the named Defendants in the English Proceedings.  The

English Proceedings were commenced by Claimants, including the Petitioners, by way of a

Claim Form issued on November 23, 2015, and Particulars of Claim were subsequently filed on

February 24, 2016.  *See* O'Sullivan Decl. ¶ 5.  Permission was granted by Order of Mr. Justice

Blair sealed November 1, 2016 for the Claimants to:  (i) amend the Claim Form and the

Particulars of Claim; (ii) add Robert Foresman to the proceedings; and (iii) to serve the Amended

Claim Form and Amended Particulars of Claim and any other documents in the proceedings on

Defendant Foresman out of the jurisdiction in the United States.  *See id.* at ¶ 7.  Amended

Particulars of Claim were filed on November 15, 2016.  *See id.* at ¶ 8.  Thereafter, on November

28, 2016, Mr. Foresman was served with the Amended Claim Form and Amended Particulars of

Claim out of the jurisdiction in the United States.  *See id.* at ¶ 9.  Respondent Foresman filed an

acknowledgement of service on December 19, 2016 indicating that he intended to contest the

jurisdiction of the English Court, although ultimately he did not do that.  *See id.*  Pursuant to the

Order of Mr. Justice Popplewell dated January 16, 2017, Mr. Foresman was granted an extension

to file his Defenses to the Amended Particulars of Claim until February 28, 2017, when he did.

*See id.*  Claimants' reply to Mr. Foresman was served on April 27, 2017.  *See id.*

As discussed above, Claimants seek from the Defendants, including Mr. Foresman, the

costs and expenses of the Dutch Proceedings relating to the ownership and control of Yukos

Finance and related companies as a consequence of the pre-determination of the auction of the

shares in Yukos Finance, the purported transfer to Promneftstroy of Yukos Oil's shareholding in

Yukos Finance and the purported exercise by or on behalf of Promneftstroy of Yukos Finance's rights.  *See id.* at ¶ 19.  Claimants allege that the Defendants in the English Proceedings caused them harm by wrongfully causing or facilitating the participation of Promneftstroy in the auction of shares in Yukos Finance, knowing and intending that it had been pre-determined that such auction would purportedly be won by Promneftstroy at a pre-agreed price.  *See id.*  Further, the Claimants allege that due to Defendants' interference with respect to the proposed sale of shares in Transpetrol, they have lost investment income because they were unable to freely invest the proceeds of the sale of Yukos Finance's shareholding in Transpetrol.  *See id.*

Respondent Foresman has key personal knowledge relevant to the issue of whether the Defendants (including Mr. Foresman himself) in the English Proceedings knew and intended that the auction of Yukos Finance was pre-determined to be won by Promneftstroy at a pre-agreed price with a pre-agreement to sell Transpetrol to a purchaser nominated by the Russian state at a dramatically below market price, and as regards the Defendants' representations (including those made by Mr. Foresman personally) to the Slovak Republic, that the sale by Yukos Finance of its shareholding in Transpetrol could not take place without involvement and consent of the Defendants.  *See id.* at ¶ 20.  The Defendants in the English Proceedings have denied that the auction of Yukos Finance had a pre-determined outcome and deny that their actions interfered with the affairs of Yukos Finance as it relates to the sale of the Transpetrol shares.  *See id.* at ¶¶ 20-21.  Because of Mr. Foresman's central role with respect to the auction, Claimants believe that he has unique personal knowledge to rebut these pleadings.  *See id.* at ¶¶ 20-21.

Claimants also seek to obtain testimony from Mr. Foresman concerning his actions related to Promneftstroy, and his and his Co-Defendants' participation in and knowledge of: (i) the auction of Yukos Finance; (ii) the financing of Promneftstroy's bid for the Yukos Finance

shares; (iii) the pre-agreement to sell Transpetrol to a purchaser nominated by the Russian state

at a dramatically below market price, (iv) the management of Promneftstroy, and (v) due

diligence performed in connection with the Yukos Finance auction.  Such discovery will further

demonstrate that the auction of Yukos Finance was rigged in a corrupt process in which the

Defendants in the English Proceedings played key roles.  *See id.*  at ¶ 22.  Further, Claimants

seek to obtain testimony from Respondent Foresman in respect of his involvement in

representations made by him and the other Defendants to the Slovak Republic regarding Yukos

Finance's sale of shares in Transpetrol.  *See id.*

**E.      Previous Discovery Obtained From Respondent Foresman In the Dutch Proceedings and Co-Defendants in the English Proceedings Under 28 U.S.C. § 1782**

Petitioners and other associated parties have already obtained discovery relating to the

Yukos Finance auction through the Section 1782 process.  On September 22, 2014, Petitioner

Godfrey and Stichting Administratiekantoor Financial Performance Holdings, a co-plaintiff in

one of the Dutch Proceedings (*Stichting FPH, Godfrey, et al. v. Rosneft, et al.* ("Stichting Dutch

Proceedings")) filed an *ex parte* application in this District pursuant to Section 1782 for an order

permitting for the testimony of Respondent Foresman in aid of and for use in the Stichting Dutch

Proceedings.  *See In re Application of David A. Godfrey and Stichting Administratiekantoor

Financial Performance Holdings*, Case No. 14 Misc. 00316 (S.D.N.Y. Sep. 22, 2014);

Krolewski Decl. ¶ 18.  The Court granted the discovery sought in the application on September

23, 2014.  *See* Krolewski Decl. Ex. Q.  Mr. Foresman did not contest the Court's Order nor the

subpoena issued under the application, and he had his deposition taken on November 4, 2014 at

the offices of Gibson Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York.  *See id.*

at ¶ 18, Ex. D.

That prior deposition was taken in aid of and for use in the Stichting Dutch Proceedings, not the English Proceedings, which were not commenced until a year after Mr. Foresman's deposition. *See* O'Sullivan Decl. ¶ 5. Further, and more importantly, at the time of the prior deposition, Petitioners had only just received, and had not yet been able to fully review and digest, relevant RenCap documents and emails pertaining to the critical events and Mr. Foresman's role in them. *See id.* at ¶¶ 15-16. These documents/emails belie the Defendants' false denials in the English Proceedings that the Yukos Finance auction was rigged, and the newly obtained documents/emails provide additional evidence that supports the Petitioners' claims against Respondent Foresman. *See id.* For example, the newly obtained documents/emails show that Mr. Foresman: (i) was dealing with the Russian President's closest associates in connection with the Yukos Finance assets; (ii) misrepresented facts to the United States government related to the auction of shares in Yukos Finance and the shares of Transpetrol; and (iii) took affirmative steps to destroy and delete his documents related to the auction of shares in Yukos Finance. *See id.* The documents also may refresh Mr. Foresman's recollection of numerous facts that, at the prior deposition, he purportedly could not remember. *See id.* Although, the Petitioners were able to question Respondent Foresman on some of the newly obtained documents/emails, because of the volumes involved, the Petitioners were unable to complete their review and analysis of those documents/emails until after Respondent Foresman's deposition was held, and therefore, were unable to question him about them – including, but not limited to the second and third issues identified above. *See id.* at ¶ 16.

The Respondents have also sought and obtained discovery pursuant to Section 1782 from one of Respondent Foresman's Co-Defendants, Stephen Lynch, in aid of and for use in the English Proceedings. Specifically, on May 2, 2017 the Petitioners filed an *ex parte* application

in the Southern District of Florida to authorize the issuance of a subpoena requiring Stephen Lynch to appear for deposition as well as to produce documents pursuant to Section 1782.  *See In re Emergency Ex Parte Application of David A. Godfrey and Yukos Finance B.V.*, Case No. 17-21631-MGC (S.D. Fla. May 2, 2017); Krolewski Decl. ¶ 19.  The Court granted the discovery and later denied Mr. Lynch's motion to quash the subpoena (although it narrowed the relevant time period for documents requested by the Petitioners).  *See In re Emergency Ex Parte Application of Godfrey,* No. 17-21631-CV, 2018 WL 1863749, at * 12 (S.D. Fla. Feb. 22, 2018). Thereafter, Mr. Foresman's Co-Defendant in the English Proceedings produced documents and was deposed on April 17, 2018 at the offices of Gibson Dunn & Crutcher, LLP, London, England.  *See* Krolewski Decl. ¶ 19, Ex. R.

### III.     SECTION 1782 AUTHORIZES THE DISCOVERY PETITIONERS SEEK AND THE DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PETITIONERS' REQUESTED DISCOVERY

**A.     Applicable Law**

Section 1782(a) provides that federal district courts may order discovery for use in a foreign or international tribunal from persons residing in or found in the district where the application is made.  *See* 28 U.S.C. § 1782.[1]  Where the information sought is relevant, it is "presumptively discoverable under § 1782."  *In re Bayer AG,* 146 F.3d 188, 196 (3d Cir. 1998), *as amended* (July 23, 1998).  "As a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the

---

[1]     Section 1782 provides: "(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for talking the testimony or statement or producing the document or other thing."

production of evidence by persons found or residing in the United States for use in foreign

litigation." *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant*

*to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings,* No.

15-MC-417 (LAK), 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016) *see also In re Bayer*, 146

F.3d at 195 ("Consistent with the statute's modest prima facie elements and Congress's goal of

providing equitable and efficacious discovery procedures, district courts should treat relevant

discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the

application can demonstrate facts sufficient to justify the denial of the application.")

    The threshold statutory requirements of Section 1782(a) are: (1) the persons from whom

discovery is sought must reside in or be found in this district, (2) the discovery must be for use in

a proceeding in a foreign tribunal and (3) the applicant must be an "interested person." *See Intel*

*Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 241 (2004); *see also Mees v. Buiter*, 793

F.3d 291, 297 (2d Cir. 2015). When all three requirements are met, the decision to grant the

request rests with the district court. *See Intel,* 542 U.S. at 260-61; *Mees,* 793 F.3d at 297 ("Once

those statutory requirements are met a district court may grant discovery under § 1782 in its

discretion."); *In re Edelman,* 295 F.3d 171, 180-81 (2d Cir. 2002) ("Congress has expressed as

its aim that the statue be interpreted broadly and that  courts exercise discretion in deciding

whether, and in what manner, to order discovery in particular cases . . . Congress planned for

district courts to exercise broad discretion over the issuance of discovery orders pursuant to §

1782(a). . ."); *In re Application for an Order Permitting Metallgesellschaft AG to take*

*Discovery,* 121 F.3d 77, 78-79 (2d Cir. 1997) ("Under § 1782, once the statutory requirements

are met, a district court is free to grant discovery in its discretion . . . The permissive language of

§ 1782 vests district courts with discretion to grant, limit, or deny discovery").

In *Intel,* the Supreme Court further articulated the following factors a district court should consider when determining whether to grant an application pursuant to Section 1782(a):  (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome.  542 U.S. at 264-65; *see also Mees,* 793 F.3d at 298.  Petitioners satisfy all of those requirements and the discretionary factors outlined in *Intel* weigh heavily in favor of granting Petitioners' requested discovery.  It is also instructive that the Court in the Southern District of Florida has already held that the Petitioners' Section 1782 application for discovery from Mr. Foresman's Co-Defendant in aid of and for use in the English Proceedings satisfied the statutory and discretionary factors.  *See In re Emergency Ex Parte Application of Godfrey,* 2018 WL 1863749 at *8-10.

**B.     The Information Sought Is Highly Relevant and Presumptively Discoverable Under Section 1782**

The deposition discovery Petitioners seek is for use in proceedings before a foreign tribunal.  The English Proceedings are currently pending in London, England in the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court ("English Court").  *See* O'Sullivan Decl. ¶ 1, 5; Krolewski Decl. Ex. B.  In the English Proceedings, Petitioners argue, among other things, that the Defendants caused them harm by wrongfully causing or facilitating the participation of Promneftstroy in the auction of shares in Yukos Finance, knowing and intending that it had been pre-determined that such auction would purportedly be won by Promneftstroy at a pre-agreed price and by interfering with respect to the proposed sale of shares in Transpetrol, which resulted in the Petitioners loosing

investment income because they were unable to freely invest the proceeds of the sale of Yukos Finance's shareholding in Transpetrol.  *See* O'Sullivan Decl. ¶ 19.

Respondent Foresman has key personal knowledge relevant to show that the Defendants in the English Proceedings knew and intended that the auction of Yukos Finance was pre-determined to be won by Promneftstroy at a pre-agreed price with a pre-agreement to sell Transpetrol to a purchaser nominated by the Russian state at a dramatically below market price as well as about the Defendants' representations to the Slovak Republic, that the sale by Yukos Finance of its shares of Transpetrol could not take place without involvement and consent of the Defendants.  *See id.* at ¶ 20.  The Defendants in the English Proceedings have denied that the outcome of the auction of Yukos Finance was pre-determined and deny that their actions interfered with the affairs of Yukos Finance as it relates to the sale of the Transpetrol shares.  *See id.* at ¶ 21.  Claimants believe that Mr. Foresman has uniquely relevant personal knowledge necessary to rebut these pleadings.  Petitioners believe that the deposition sought from Mr. Foresman would further demonstrate that the Lot 19 bankruptcy auction was rigged and carried out through a corrupt process in which the Defendants in the English Proceedings played an instrumental role.  *See id.* at ¶¶ 20-22.

Furthermore, the English Court will likely be receptive to the evidence obtained through the United States Federal Court's assistance.  *See id.* at ¶ 29.  Thus, evidence obtained from Respondent Foresman by this Application may be used in the English Proceeding.  *See id.*

**C.      The Requested Discovery Meets the Statutory Requirements of Section 1782**

**1.      Respondent Foresman Resides and Is Found Within the District**

The first statutory requirement for Section 1782 discovery is met because Respondent Foresman resides in the Southern District of New York.  *See Gushlak v. Gushlak,* 486 F. App'x 215, 218 (2d Cir. 2012) (summary order).  Mr. Foresman's residence in Westchester County and

employment in Manhattan are sufficient for Respondent Foresman to be "found" in the District as required by Section 1782.  *See In re Edelman*, 295 F.3d at 178 ("We think . . . § 1782(a) supports a flexible reading of the phrase 'resides or is found'").  He is subject to service of a subpoena in the District.  *See id.* at 180 ("[W]e hold that if a person is served with a subpoena while physically present in the district of the court that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district.").  Finally, this Court has previously found that Mr. Foresman "resides or may be found in the Southern District of New York."  *See* Krolewski Decl. Ex. Q.

### 2.    The Discovery Sought Is Intended For Use In A Foreign Proceeding

The second statutory requirement for Section 1782 discovery is met because "[t]he discovery sought is for use in a proceeding before the High Court of Justice in England, United Kingdom, which is undisputedly a proceeding before a foreign or international tribunal under Section 1782(a)."  *In re Ex Parte Application of Glob. Energy Horizons Corp.*, No. 5:15-MC-80078-PSG, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) (footnotes and internal quotation marks omitted). Specifically, the English Proceedings are before the High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court, which permits submission of witness testimony at its current stage.  *See In re Application of Guy*, No. M 19-96, 2004 WL 1857580, at *2 (S.D.N.Y. Aug. 19, 2004) ("[T]he High Court of Justice . . . hears the testimony of witnesses and receives documents in evidence, very much as American courts do.").  As any information obtained pursuant to this Application is intended to be used in good faith in the English Proceedings, Petitioners' Application meets Section 1782's second statutory requirement.  *See* O'Sullivan Decl. ¶¶ 20-21, 29.

### 3.     Each of the Petitioners Is an Interested Person

Petitioners meet the third and final statutory requirement of Section 1782 because, as Claimants to the English Proceedings, Petitioners are unquestionably "interested person[s]."  *See In re Application of Guy,* 2004 WL 1857580 at *2 ("Applicants, as Claimants in that proceeding [before the High Court of Justice], are interested persons within the meaning of § 1782."). Indeed, a litigant in a foreign proceeding before a foreign tribunal "may be the most common example of the interested person(s) who may invoke § 1782."  *Intel,* 542 U.S. at 256.

### D.     The *Intel* Discretionary Factors Weigh Heavily in Favor of Granting Petitioners' Application

### 1.     Although the Respondent is a Party to the Foreign Proceeding, the Foreign Tribunal Does Not Have the Ability to Control the Evidence

Respondent Foresman is a party to the English Proceedings.  *See* O'Sullivan Decl. ¶¶ 3, 24.  The Courts in this District, however, have held that *Intel* does not "preclude[] § 1782 discovery of parties participating in the underlying international proceeding.  Section 1782 aid is not foreclosed just because the need for such aid may not be as readily apparent."  *In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 MC 221 RPP, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012); *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings,* No. 15-MC-417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016); *see also Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 98 (2d Cir. 2009) (holding that the District Court did not abuse its discretion in permitting Section 1782 discovery even if the first *Intel* factor should have weighed in the respondents favor).  Instead, the relevant inquiry in connection with the first *Intel* discretionary factor is "whether the foreign tribunal has the ability to control the evidence sought

and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." *In re Porsche*, 2016 WL 702327 at *7.

Here, although Respondent Foresman is a party to the English Proceedings, it is unlikely that the English Court could order the testimony sought here. The English disclosure rules have limits, and "oral discovery and testimony may be entirely unavailable to Petitioners due to the general unavailability of depositions under English law and the inability of English courts to compel nonresidents to give live testimony." *In re Emergency Ex Parte Application of Godfrey,* 2018 WL 1863749 at *9; *see also* O'Sullivan Decl. ¶¶ 26, 28. Under similar circumstances, the Courts in this District regularly hold that the evidence sought would be unavailable but for Section 1782 assistance, and therefore, the first *Intel* factor weights in the petitioner's favor. *See e.g.*, *In re Porsche,* 2016 WL 702327 at *7-8 (despite respondent being a party to the foreign proceeding, the Court held that the first *Intel* factor weighed in the petitioners favor because under German law, the foreign tribunal could not order the respondent to provide the testimony and to produce the documents that the Section 1782 application sought); *In re Auto-Guadeloupe*, 2012 WL 4841945 at *5-6 (despite respondent being a party to the foreign proceeding, the Court held that the first *Intel* factor weighed in the petitioners favor because under French law, it was not clear whether the foreign tribunal could order the respondent to produce the documents that the Section 1782 application sought); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (first *Intel* factor weighed in the petitioner's favor because the Venezuelan court may not be able to order the party respondent to produce the documents sought under the Section 1782 application).

Accordingly, the first *Intel* factor weighs heavily in favor of granting Petitioners' requested discovery.

2.    **The Nature of the Foreign Tribunal, the Character of the English Proceedings and the English Court's Receptivity to Assistance Favor Granting the Petitioners' Application**

The second *Intel* factor looks to the "receptivity" of the foreign tribunal.  *Intel,* 542 U.S. at 264.  "Receptivity" is not a question of whether the foreign court would or could permit this particular discovery.  The Supreme Court in *Intel* explicitly found that Section 1782(a) does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction."  542 U.S. at 259-60.

Here, even if the discovery that Petitioners seek would be unavailable to Petitioners without the aid of a United States court, the English Court likely would be receptive to the requested discovery.  *See* O'Sullivan Decl. ¶ 29; *Intel,* 542 U.S. at 262 ("[N]ondiscoverability under English law [does] not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782.") (internal citation omitted); *Brandi-Dohrn v. IKB Deutsche Industriebank,* 673 F.3d 76, 82 (2d Cir. 2012) (no requirement that the petitioner show that the evidence is admissible in the foreign proceedings).  In addition, although Section 1782 does not require that a petitioner demonstrate that the evidence sought would be admissible in the foreign proceedings, the type of evidence sought here likely would be admissible in the English Proceedings because "the English Action is pending in the High Court of Justice, [which] hears the testimony of witnesses and receives documents in evidence, very much as American courts do."  *In re Application of Guy,* 2004 WL 1857580 at *2-3 (allowing Section 1782 document discovery and depositions in connection with English litigation).  Moreover, English courts regularly accept Section 1782 evidence regarding issues of liability.  *See, e.g., In re Ex Parte Application of Glob. Energy Horizons Corp.,* No. 5:15-MC-80078-PSG, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) ("[T]he English Court would be receptive to the

evidence because of how critical it is to determine the extent of Gray's breach and resulting damages.").

To that end, "[d]istrict courts routinely allow applicants to obtain . . . Section 1782 discovery related to litigation pending in the United Kingdom." *In re IKB Deutsche Industriebank AG,* No. 09-CV-7852, 2010 WL 1526070, at *4 (N.D. Ill. Apr. 8, 2010); *In re Ex Parte Application of Glob. Energy Horizons Corp.,* 2015 WL 1325758 at *2 ("There is no authority suggesting the English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena."); *In re Application of Michael Wilson & Partners, Ltd.,* No. CIV.A. 06-CV-02575MS, 2007 WL 2221438, at *5 (D. Colo. July 27, 2007) (allowing Section 1782 depositions in connection with litigation in the United Kingdom); *In re Letter of Request from Crown Prosecution Serv. of United Kingdom,* 870 F.2d 686, 687 (D.C. Cir. 1989). Moreover, as noted, the Court in the Southern District of Florida already has allowed the Petitioners to obtain Section 1782 discovery from Respondent Foresman's Co-Defendant, Stephen Lynch.  *See In re Emergency Ex Parte Application of Godfrey,* 2018 WL 1863749 at *9-10 (finding, in part, that the English court would be receptive to the discovery sought and holding that the second *Intel* factor weighed in the Petitioners' favor).

There is nothing that suggests that the English court here would not be receptive to the evidence obtained pursuant to this Application.[2]  Rather, the evidence sought in this Application

---

[2]       A "district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . Authoritative proof is [limited to] language in a forum country's judicial, executive or legislative declaration that specifically address the use of evidence gathered under foreign procedures."  *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (internal citations and quotation omitted); *see also In re Porsche*, 2016 WL 702327 at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.'") (internal citations omitted).

likely would be admitted into evidence by the English court and the English legal system is receptive to discovery obtained in the United States under Section 1782.  As such, the second *Intel* factor weighs heavily in favor of granting Petitioners' requested discovery.

### 3.     This Application Is Not an Attempt to Circumvent English Law or Policy

The third discretionary *Intel* factor, whether the applicant is attempting to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," is meant to preclude bad faith misuse of the process.  *Intel*, 542 U.S. at 265; *see also Mees,* 793 F.3d at 298.  Petitioners' Application is made in good faith and does not attempt to circumvent any English law or policy.  Indeed, the English Court has few requirements or formalities regarding the admission of relevant evidence, and the English Court would have the power to order that any discovery obtained pursuant to this Section 1782 Application may or may not be relied upon in the English Proceedings.  *See* O'Sullivan Decl. ¶ 29.  The factual circumstances described above establish Petitioners good faith need to obtain limited discovery regarding Mr. Foresman's knowledge of and participation in the sham auction of Yukos Finance.  Where, as here, evidence is probative of the issues in English Proceedings, the English Court is highly likely to find that it is admissible.  *See id.*

Moreover, "[t]he Supreme Court and the Second Circuit have made clear that the third *Intel* factor does not turn on whether the evidence sought in the U.S. proceeding would be available in the foreign proceeding."  *In re Porsche*, 2016 WL 702327 at *9; *Intel*, 542 U.S. at 261 ("there is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.") (internal quotation and citations omitted).  Indeed, "[Section] 1782 contains no foreign-discoverability requirement."  *Mees*, 793 F.3d at 303.  Nor does it contain a foreign-admissibility requirement.  *See Brandi-Dohrn v. IKB Deutsche Indistriebank* AG, 673 F.3d 76, 82 (2d Cir. 2012).  Finally, Section 1782 does not require an

applicant to previously have tried and failed to obtain the sought evidence in the foreign proceeding in order to obtain relief under Section 1782.  *See Mees*, 793 F.3d at 303-04.

There is no evidence here of any bad faith misuse of the process.  The discovery that Petitioners seek is consistent with their good faith desire to present a case in the English Proceedings.  *See* O'Sullivan Decl. ¶ 20-22.  If the English Proceedings were required to proceed without the benefit of discovery from Mr. Foresman, it would be a detriment to Claimants' case. *See id.* ¶ 27.  Accordingly, the third *Intel* factor also weighs heavily in favor of granting Petitioners' requested discovery.

### 4.    The Discovery Is Neither Unduly Burdensome Nor Intrusive

Petitioners' discovery request is neither unduly burdensome nor intrusive.  Petitioners' request for discovery is narrowly targeted to a single deposition relevant to the English Proceedings, and a limited request for production of documents concerning the provenance of RenCap documents produced in late 2014 and documents received from or provided to any branch of the U.S. government related to an investigation into Russian interference with the U.S. electoral process.[3]  *See London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (finding no undue burden "[g]iven the need for the evidence, and the minimal invasion required" where Section 1782 request was narrowly tailored).  Petitioners request discovery from Mr. Foresman concerning his actions related to Promneftstroy, the Yukos Finance auction that occurred on August 15, 2007 and Transpetrol.  *See* O'Sullivan Decl. ¶¶ 20-22.  There is no question that he, as an executive at one of the Consortium members at all relevant times, possesses relevant knowledge and information related to these issues.

---

[3]    Even if the Court were to find that the discovery requested was unduly burdensome or intrusive, which it should not, the Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Mees*, 793 F.3d at 302 (internal citations omitted).

Indeed, the fact that Respondent Foresman did not contest a subpoena issued pursuant to a Section 1782 application in aid of the Stichting Dutch Proceedings and sat for a deposition in Manhattan in 2014 is further evidence that sitting for a deposition in Manhattan, where he works, is neither unduly burdensome nor intrusive.  *See e.g.*, *Mak v. For Issuance of Discovery in Aid of Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. C 12-80118 SI, 2012 WL 2906761, at *2 (N.D. Cal. July 16, 2012) (holding that appearing for a deposition approximately 20 miles from one's residence is not unduly burdensome or intrusive).  The fact that he previously was deposed in aid of the Stichting Dutch Proceedings does not make the Petitioners' discovery request in aid of and for the use in the English Proceedings unduly burdensome or intrusive, either.  His prior deposition occurred in 2014, a year prior to Petitioners' institution of the English Proceedings. *See* Krolewski Decl. ¶ 18, Ex. B.  Nothing in the Federal Rules of Civil Procedure suggests a person should not be deposed in successive litigation even if two cases involve overlapping facts.

Even if this application could be construed as an attempt to re-open the prior 2014 deposition – which it is not – Petitioners would have good cause to do so because of new evidence.  Documents/emails that Petitioners did not have the opportunity to complete reviewing and analyzing prior to Mr. Foresman's prior deposition support their claims and contradict the pleadings filed by Mr. Foresman and his Co-Defendants in the English Proceedings.  *See* O'Sullivan Decl. ¶¶ 15-16.  Moreover, the newly obtained documents address many facts that Respondent Foresman claimed he could not recall at his November 2014 deposition.  *See id.* Courts regularly find good cause and re-open depositions under similar facts.  *See id.; see e.g., All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146-L BLM, 2013 WL 1882260, at *7 (S.D. Cal. May 3, 2013) (emails produced after the original depositions constituted new

evidence that Plaintiff could not have obtained from another source and provided the requisite need for re-deposing the witness).

Accordingly, the fourth and final *Intel* factor likewise weighs heavily in favor of granting Petitioners' request for discovery.

**E.    *Ex Parte* Relief Is Appropriate Under Section 1782(a)**

An *ex parte* proceeding is specifically contemplated and authorized under Section 1782(a).  As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents and/or testify at a deposition.  Indeed, applications pursuant to section 1782 are "typically or, at least frequently" made and granted on an *ex parte* basis.  *In re Porsche*, 2016 WL 702327 at *1 n. 3.  *Ex parte* applications are "appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas."  *See id.; see also Gushlak v. Gushlak,* 486 F. App'x 215, 217 (2d Cir. 2012) (summary order) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash . . .").

## IV.    CONCLUSION

Based upon the foregoing and accompanying papers, Petitioners respectfully request that this Court grant this *ex parte* Application in its entirety.

Dated:    New York, New York
          August 7, 2018

                                    Respectfully Submitted,


                                    By: ___/s/ Jeffrey S. Jacobson_____

                                    Jeffrey S. Jacobson (JJ-8872)
                                    Martin A. Krolewski
                                    KELLEY DRYE & WARREN LLP
                                    101 Park Avenue
                                    New York, New York  10178
                                    Telephone:  (212) 808-7800
                                    Email:  jjacobson@kelleydrye.com

                                    *Attorneys for Petitioners David A. Godfrey
                                    and Yukos Finance B.V.*